# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60571-SINGHAL/DAMIAN

MELISSA ANN MUSGRAVE,

       Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security Administration,

       Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 20 AND 23]

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment, filed February 15 and April 13, 2022. [ECF Nos. 20 and 23]. Plaintiff, Melissa Ann Musgrave ("Plaintiff" or "Ms. Musgrave"), seeks reversal and remand of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI"). This matter was referred to the undersigned by the Honorable Raag Singhal, United States District Judge, for a Report and Recommendation. [ECF No. 26]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' memoranda [ECF Nos. 20, 23, and 25], the administrative record [ECF No. 13], the pertinent portions of this Court's record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons that follow, the undersigned recommends that Plaintiff's Motion for Summary Judgment [ECF No. 20] be denied and that the Commissioner's Motion for Summary Judgment [ECF No. 23] be granted.

# I.  BACKGROUND

### A.  *Ms. Musgrave's Claim For Benefits*

Ms. Musgrave alleged disability beginning on September 25, 2016, the amended alleged onset date, due to the following impairments: right eye vision loss with corneal ulcer, corneal transplant with complications, depression, panic attacks, and anxiety. (R. 98–99).[1] She was forty-three years of age on her amended alleged onset date and forty-five at the time of her administrative hearing, such that she falls within the definition of a "younger person" (under age 50). *Id.*; *see also* 20 C.F.R. § 416.963(c). Ms. Musgrave has a high school education and past work experience as a salesclerk, certified nursing assistant, flight attendant, and waitress. (R. 76, 282).

### B.  *Ms. Musgrave's Testimony Regarding Her Alleged Impairments*

On November 6, 2018, Ms. Musgrave appeared, represented by counsel, and testified at the hearing before the Administrative Law Judge ("ALJ"). (R. 67–75). Ms. Musgrave stated she is unable to work because she does not like to be around people, she gets anxious around others, and she is unstable on her feet. (R. 67). Ms. Musgrave explained that she falls a lot due to the medications she is taking, and she feels "off-balance all the time" due to her visual impairments. *Id.*

When asked about her migraine headaches, Ms. Musgrave stated that she has migraines "every single day for about like five hours a day" and "[s]ometimes it lasts a whole day." (R. 69–70). She takes medication prescribed by her doctors every day for her migraines.

---

[1] All references to "R." refer to the transcript of the Social Security Administration filed on August 9, 2021. [ECF No. 13]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

(R. 70). The medication causes side effects of nausea and instability. *Id.* She usually sleeps or lays in bed and puts a cold compress on her head to alleviate the headaches. *Id.*

Ms. Musgrave testified that she has problems with her left eye and is unable to see at a distance or up close unless she wears large bifocals. (R. 71). As for her right eye, she stated, "I can't see anything." *Id.* Ms. Musgrave testified that she is unable to read or drive due to her vision limitations and anxiety, and she gets around by taking an Uber or having a friend or her mother drive her places. (R. 72). She can watch TV, but she usually listens to it. *Id.*

Ms. Musgrave also testified that she feels depressed and just wants to lay in bed and be in her pajamas all day. (R. 72). She experiences anxiety every day and does not leave the house unless she has a doctor's appointment. (R. 73). She explained that she avoids crowds of people because sometimes somebody will bump into her and then she experiences anxiety. *Id.* Ms. Musgrave lives with her mother who takes care of shopping for necessities and most of the household chores. *Id.* Ms. Musgrave stated that she can bathe and dress on her own while sitting down but her mother helps to wash her hair because she cannot get water on her right eye. (R. 74).

According to Ms. Musgrave, she could work in a standing position for about twenty minutes during an eight-hour workday. (R. 68). She can also sit for about an hour to work and can lift approximately ten pounds. (R. 69). Ms. Musgrave reiterated that she is unable to work with other people due to her vision and instability problems. (R. 75).

**C.**     ***Relevant Medical Evidence And Expert Opinions Regarding Ms. Musgrave***

The record contains treatment notes from numerous doctors and other professionals regarding Ms. Musgrave's conditions. Below is a non-exhaustive summary of the relevant

medical evidence and expert opinions regarding Ms. Musgrave's alleged impairments, as well as the opinion of the impartial vocational expert.

### 1.   *Relevant Medical Evidence Regarding Ms. Musgrave's Alleged Impairments*

Ms. Musgrave was treated at the Bascom Palmer Eye Institute from September 2016 to May 2018. (R. 356, 395–438, 550–603). During that time, she underwent two surgeries, including a corneal transplant in October 2016 and a cataract removal and glaucoma surgery in February 2017. (R. 122, 330, 435–37, 512–15). The treatment notes indicate she developed a bacterial corneal ulcer in her right eye. (R. 369). She also developed glaucoma and never regained useful vision in her right eye. (R. 56, 330). Ms. Musgrave's continued care at Bascom Palmer indicate her vision remained "stable but limited." (R. 552, 556, 560, 563, 566, 569).

Before the eye surgeries, Jennifer Goldman, D.O., Ms. Musgrave's primary treating physician, diagnosed her with anxiety, depression, and chronic headaches. (R. 479, 482–83). A treatment note from March 2016 indicates Ms. Musgrave experienced daily headaches with no visual symptoms or aura that "remained unchanged" for six years. (R. 483). In December 2017 and May 2018, Dr. Goldman noted that Ms. Musgrave's chronic migraines were "uncontrolled or worsened" and referred her to a neurologist. (R. 764, 779).

On May 29, 2018, Ms. Musgrave consulted Maike T. Blaya, M.D., a neurologist, regarding her chronic headaches. (R. 666). The consultation note indicates Ms. Musgrave described her headaches as pulsatile and varying in location, but often over the frontal region bilateral or unilateral. *Id.* Her headaches were associated with neck pain, nausea, and sensitivity to smells (osmophobia), loud sounds (phonophobia), and bright lights (photophobia). *Id.* Ms. Musgrave also reported that the headaches occurred more than 50% of the days and she had tried multiple over-the-counter medications and topiramate but saw

no change or improvement. *Id.* Dr. Blaya prescribed propranolol and suggested obtaining authorization for Botox injections for the migraines if the other medication was ineffective. (R. 671). During a follow-up visit with Dr. Goldman, Ms. Musgrave reported that the propranolol was not alleviating her migraines. (R. 781–82).

On October 8, 2018, Dr. Blaya completed a Headaches Residual Functional Capacity Questionnaire based on the one-time consultation with Ms. Musgrave in May 2018 (the "Questionnaire"). (R. 534–37). Dr. Blaya diagnosed Ms. Musgrave with chronic migraines, anxiety, depression, and chronic pain syndrome. (R. 534). Dr. Blaya noted that Ms. Musgrave's headaches lasted over six hours and that bright lights, noise, and movement caused the headaches to worsen whereas lying in a dark room caused the headaches to improve. *Id.* Dr. Blaya also noted that Ms. Musgrave experienced impaired sleep and that her vision impairments and glaucoma "could trigger more migraines." (R. 535). In the Questionnaire, Dr. Blaya checked "Yes" regarding whether Ms. Musgrave would be precluded from performing even basic work activities and need a break from the workplace but checked "No" as to whether Ms. Musgrave would need to take unscheduled breaks during an 8-hour workday. (R. 536). Dr. Blaya also noted that Ms. Musgrave would be capable of tolerating low stress jobs. *Id.* Dr. Blaya opined that Ms. Musgrave's pain and psychiatric conditions are "disabling" and that her headaches "may improve w[ith] treatment plan." (R. 537).

### 2. *Relevant Expert Opinions Regarding Ms. Musgrave's Alleged Impairments*

At the hearing before the ALJ, two medical experts testified regarding Ms. Musgrave's conditions. Below is a summary of the relevant testimony of each expert.

Regarding Ms. Musgrave's visual impairments, Lawrence T. Reese, M.D., an ophthalmologist, testified that Ms. Musgrave had "exceedingly poor" and "almost useless vision in the right eye" and "excellent vision in the left eye." (R. 56). Dr. Reese stated he believed that Ms. Musgrave could read and drive notwithstanding her visual impairments in the right eye. (R. 56–57). When asked by the ALJ whether there is anything in the record that would support Ms. Musgrave's representations of having limited vision in the left eye, Dr. Reese testified there was "[n]othing whatsoever" and "the records consistently support excellent vision in the left eye with [a] full visual field." (R. 58). When asked by Ms. Musgrave's attorney whether it is possible that Ms. Musgrave's constant complaints of migraines could be a result of her vision problems or trauma sustained in the right eye, Dr. Reese stated that Ms. Musgrave's visual impairments may cause headaches. *Id.*

Regarding Ms. Musgrave's mental impairments, Olin Hamrick, Ph.D., a licensed clinical psychologist, testified at the hearing that Ms. Musgrave has a legitimate diagnosis of depression or major depressive disorder and generalized anxiety disorder. (R. 60). When asked by the ALJ whether Ms. Musgrave's impairments meet or medically equal one of the listed impairments, Dr. Hamrick stated he did not see "evidence of a meeting or equaling of the listing" because the only documented treatment regarding mental health is outpatient medication management. *Id.* Dr. Hamrick further testified that given Ms. Musgrave's physical limitations and mental impairments, it would be reasonable to limit her work experience to simple, routine, and repetitive tasks, with no more than occasional superficial contact with the public and occasional contact with supervisors and coworkers, no more than an occasional requirement to adapt to changes, and no work involving high expectations of productivity or fast-paced work. (R. 62).

### 3. *Vocational Expert Testimony*

At the hearing before the ALJ, an impartial vocational expert testified that a person with Ms. Musgrave's same age, education, work experience, Residual Functional Capacity ("RFC"), and limitations set forth by Dr. Reese and Dr. Hamrick, cannot perform any of her past semi-skilled or skilled work but that she would be able to perform unskilled work. (R. 77). When asked by the ALJ whether jobs exist in the national economy for a person with Ms. Musgrave's age, education, work experience, and RFC, the vocational expert provided two representative occupations such a person could perform: cleaner/housekeeper and garment sorter. (R. 78).

The ALJ then inquired whether there would be any jobs in the national economy for a person with Ms. Musgrave's age, education, work experience, and RFC, but who can only stand for twenty minutes out of an eight-hour workday, sit for one hour out of an eight-hour workday, and lift ten pounds. (R. 79). The vocational expert could not provide any representative occupations that such a person with those limitations could perform in the national economy. *Id.* The vocational expert explained that such a person would be unable to complete a normal eight-hour workday, and therefore, could not maintain full-time employment or substantial activity. *Id.*

Ms. Musgrave's attorney asked the vocational expert whether Ms. Musgrave would be precluded from performing the representative occupations provided that are available in the national economy if Ms. Musgrave were off task 15% of the day due to the side effects of her medications, including nausea and drowsiness. (R. 80). The vocational expert answered in the affirmative. *Id.* Ms. Musgrave's attorney also asked how many days per month Ms.

Musgrave could miss from work and still be able to maintain employment. *Id.* The vocational expert answered no more than one. *Id.*

## II.   PROCEDURAL HISTORY

Ms. Musgrave applied for SSI benefits[2] on November 16, 2016. (R. 248–56). Her application was initially denied on December 29, 2016, and again, upon reconsideration, on March 29, 2017. (R. 174–80, 185–95). Ms. Musgrave then requested a hearing,[3] which was held before an ALJ on November 6, 2018. (R. 81, 198–201). On January 9, 2019, the ALJ issued a decision finding that Ms. Musgrave was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (R. 37–47). Ms. Musgrave requested review of the ALJ's decision. (R. 239–40). On January 22, 2020, the Appeals Council granted the request for review. (R. 242–47).

On June 3, 2020, the Appeals Council issued a decision finding, like the ALJ, that Ms. Musgrave was not disabled at any time from her amended alleged onset date, and, therefore, is not eligible for SSI benefits. (R. 5–12). The Appeals Council's decision became the "final decision" of the Commissioner for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.900(a)(4)–(5); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) ("SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision.").

_____

[2] Ms. Musgrave also applied for disability insurance benefits ("DIB") on November 22, 2016. (R. 257–63). However, her insured status expired before her amended alleged onset date, and, consequently, her claim for DIB was dismissed. (R. 37, 55).

[3] Because Ms. Musgrave amended her alleged onset date of disability to September 25, 2016, which was after the expiration of her date last insured, she withdrew her request for hearing regarding her application for DIB. (R. 37).

Having exhausted her administrative remedies, on March 12, 2021, Ms. Musgrave filed the instant action seeking judicial review of the Commissioner's decision. [ECF No. 1]. *See* 42 U.S.C. § 405(g). On June 10, 2021, the Court stayed the case for sixty-days or until the date upon which the Commissioner produced the electronic certified administrative record. [ECF No. 11]. The administrative record was filed on August 9, 2021. [ECF No. 13]. Thereafter, Ms. Musgrave filed a Motion for Summary Judgment on February 15, 2022. [ECF No. 20].

Defendant, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, filed a Cross-Motion for Summary Judgment and a Response to Ms. Musgrave's Motion for Summary Judgment on April 13, 2022. [ECF No. 23]. Ms. Musgrave filed her Reply in support of her Motion for Summary Judgment on May 12, 2022. [ECF No. 25].

Both parties' Motions are fully briefed and ripe for adjudication.

### III.    THE SEQUENTIAL EVALUATION PROCESS AND THE ALJ'S FINDINGS

Eligibility for SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382c(a)(3)(A)–(B). A claimant is disabled if she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021). A plaintiff bears the burden of proving she is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 416.912(a), (c).

Here, the ALJ concluded that Ms. Musgrave is not disabled under Section 1614(a)(3)(A) of the Social Security Act based on the five-step sequential evaluation process

that must be applied to determine whether a claimant is disabled. (R. 47). *See* 20 C.F.R. § 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

At step one of this process, the ALJ must determine whether the claimant is unable to engage in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 416.920(b). SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. § 416.972(a). Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R. § 416.974–.975. If a claimant can engage in SGA, the ALJ will find that she is not disabled. 20 C.F.R. § 416.971.

At step two, the ALJ must determine whether the claimant has a severe medically determinable mental or physical impairment ("MDI") or a combination of impairments. 20 C.F.R. § 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to perform basic work activities. *Id.* If the claimant does not have an MDI or combination of impairments that is severe, she is not considered disabled. *Id.*

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in Appendix 1 to Subpart P of Part 404, Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 416.920(d), 416.925–.926. If so, the claimant is disabled. *Id.* If not, the analysis proceeds to the next step. *Id.* Before considering step four, however, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 416.920(e). A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.945. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions

and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant can perform her past relevant work, in light of her RFC. 20 C.F.R. § 416.920(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. § 416.960(b)(1). If the claimant has the RFC to do her past relevant work, she is not disabled. 20 C.F.R. § 416.920(f). If the claimant is unable to do any past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If the claimant can do other work, she is not disabled. *Id.* If she is unable to do other work, she is disabled. *Id.* At step five, the burden temporarily shifts to the Commissioner to show the existence of other jobs in significant numbers in the national economy that the claimant can perform, given her impairments. 20 C.F.R. §§ 416.912, 416.960(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles and testimony from an impartial vocational expert. *See Buckwalter*, 5 F.4th at 1321.

Applying the foregoing sequential evaluation process to Ms. Musgrave's claim for benefits, the ALJ found that: (1) Ms. Musgrave has not engaged in SGA since the amended alleged onset date of September 25, 2016; (2) her "right eye vision loss with corneal ulcer, corneal transplant with complications, depression, and anxiety" are severe impairments; however, (3) her combination of impairments does not meet or medically equal the severity of one of the listed impairments. (R. 39). The ALJ found that Ms. Musgrave has the RFC to perform "a full range of work at all exertional levels" except that she can never climb ladders

and must avoid all exposure to unprotected heights and machinery. (R. 41). The ALJ also found that Ms. Musgrave is capable of reading and driving, she could tolerate occasional interaction with co-workers, supervisors, and the public, and she could occasionally adapt to change and must avoid all fast-paced work. *Id.* As such, according to the ALJ, (4) Ms. Musgrave is unable to perform any past relevant work; but (5) she could perform other jobs that exist in significant numbers in the national economy, including cleaner/housekeeper and garment sorter. (R. 45–47). Therefore, the ALJ determined that Ms. Musgrave is not disabled under Section 1614(a)(3)(A) of the Social Security Act at any time from September 25, 2016, through January 9, 2019, the date of ALJ's decision. (R. 47).

## IV.   THE APPEALS COUNCIL'S DECISION

On June 3, 2020, after granting Ms. Musgrave's request for review of the ALJ's decision, the Appeals Council issued a decision adopting the ALJ's findings at steps one, two, three, and four. (R. 9). Specifically, the Appeals Council found that: (1) Ms. Musgrave has not engaged in SGA since September 25, 2016, the amended alleged onset date; (2) her right eye vision loss with corneal ulcer, corneal transplant with complications, depression, and anxiety are severe impairments; but (3) her combination of impairments does not meet or medically equal one of the listed impairments. The Appeals Council found that Ms. Musgrave is unable to perform her skilled or semi-skilled past relevant work. *Id.* As for mental impairments, like the ALJ found, the Appeals Council noted that Ms. Musgrave's severe depression and anxiety result in moderate limitations in understanding, remembering, persisting, or maintaining pace as well as adapting or managing oneself. *Id.*

The Appeals Council found that Ms. Musgrave has the RFC to perform a full range of work at all exertional levels with the same exertional limitations as those in the ALJ's decision

(*i.e.*, she is capable of reading and driving, but cannot climb ladders and must avoid all exposure to unprotected heights and machinery). (R. 9). However, contrary to the ALJ's decision, the Appeals Council found that Ms. Musgrave can perform only simple, routine, and repetitive tasks. *Id.* In reaching this finding, the Appeals Council considered Ms. Musgrave's mental health treatment history and gave significant weight to the non-examining source opinion of Dr. Hamrick, a psychological expert who testified at the hearing before the ALJ and opined that Ms. Musgrave is limited to simple, routine, and repetitive tasks with occasional interaction with the public, an occasional requirement to adapt to changes, and no expectation for high productivity or fast-paced work. (R. 10).

Based on the testimony of the vocational expert during the hearing before the ALJ, the Appeals Council found that Ms. Musgrave is capable of performing a significant number of jobs that exist in the national economy, and, therefore, she is not disabled.

## V.  ISSUES RAISED IN THE PARTIES' MOTIONS

Ms. Musgrave mainly argues that the ALJ[4] failed to properly evaluate evidence of her migraine headaches impairment throughout the sequential evaluation process and failed to offer specific reasons why Ms. Musgrave's subjective statements about her headaches was not credible and why the opinion of Dr. Blaya regarding Ms. Musgrave's disabling headaches was afforded little weight.[5] [ECF No. 20, at 6–11]. Specifically, Ms. Musgrave asserts that the

---

[4] Because the Appeals Council granted review of the ALJ's decision and issued a final decision adopting several parts of the ALJ's decision, the undersigned refers to the final decision as that of the ALJ for ease of reference.

[5] Plaintiff does not allege any other errors and thus has waived any other challenges she might have asserted. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. Feb. 8, 2013) (holding that claimant waived certain arguments by not expressly challenging the ALJ's findings).

13

ALJ: (1) failed to consider whether Ms. Musgrave has a severe migraine headaches impairment at step two and whether her migraine headaches equaled a medical listing at step three of the five-step evaluation process; (2) provided little to no analysis of Ms. Musgrave's migraine headaches impairment in the RFC analysis at step four; (3) failed to offer any specific reasons why Ms. Musgrave's subjective testimony about her migraine headaches was not credible; and (4) did not articulate why the evidence supports a contrary conclusion from Dr. Blaya's opinion about Ms. Musgrave's disabling headaches. *Id.* at 6–12.

Based on these challenges, Ms. Musgrave contends the ALJ's decision is not supported by substantial evidence and is the result of legal error. Ms. Musgrave seeks a reversal and remand with instructions to award benefits. In the alternative, she seeks remand for further administrative proceedings. *Id.* at 12.

The Commissioner filed a Response and Cross-Motion for Summary Judgment arguing that the final decision finding Ms. Musgrave is not disabled is supported by substantial evidence and that the correct legal standards were applied. [ECF No. 23]. The Commissioner's specific arguments in response to Ms. Musgrave's challenges are discussed below.

## VI.    APPLICABLE LEGAL STANDARDS[6]

### A.    *Review Of The ALJ's Decision*

The Court's review of the ALJ's decision is limited to determining whether it is supported by substantial evidence and whether the ALJ applied the correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*,

---

[6] The standard of review in SSI cases is the same as the standard for DIB cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing DIB is generally applicable to SSI cases.

125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but less than a preponderance. *Id.* (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id.* A court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VII.   DISCUSSION

Ms. Musgrave raises five challenges to the ALJ's decision, all of which are addressed below.

### A. *Whether The ALJ Failed To Properly Consider Plaintiff's Alleged Migraine Headaches Impairment At Step Two.*

Ms. Musgrave first argues that the ALJ erred by failing to consider whether her migraine headaches constituted a severe impairment at step two of the sequential evaluation process. [ECF No. 20 at 6]. According to the Commissioner, it is inconsequential whether Ms. Musgrave's migraines were included as a severe impairment at step two because the ALJ still found that Ms. Musgrave had severe impairments and continued the sequential evaluation process. [ECF No. 23 at 6].

The undersigned agrees with the Commissioner's reasoning on this point. "The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the [ALJ] proceeds beyond step two, [she] is required to consider the claimant's entire medical condition, including impairments

15

that the [ALJ] determined were not severe." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011) (citations omitted). The undersigned also notes that although Ms. Musgrave testified at the administrative hearing before the ALJ about her migraine headaches and the record includes some medical evidence about this alleged impairment, Ms. Musgrave did not include migraine headaches as a separate impairment in her disability claim.[7]

Accordingly, Ms. Musgrave's claim of error on this basis should be denied.

**B. Whether the ALJ Failed To Properly Consider Plaintiff's Migraine Headaches Condition At Step Three.**

Ms. Musgrave next asserts that the ALJ failed to determine whether her migraine headaches met or equaled a listed impairment at step three. [ECF No. 20 at 9]. The Commissioner argues that the ALJ is not required to specifically state which listings he considered in reaching a decision. [ECF No. 23 at 5–6].

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)). An ALJ is not required to "mechanically recite the evidence" when determining whether a claimant's impairments meet or medically equal any of the listings. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). "There may be an implied finding that a claimant does not meet a listing." *Id.* (citing *Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir. 1984)). When an ALJ states that a claimant does not have an impairment or combination of

---

[7] In her initial claim for disability, Ms. Musgrave alleged impairments due to the following medical conditions: right eye cellulitis, corneal ulceration, corneal perforation, anxiety, panic attacks, loss of coordination due to loss of sight in eye, depression, and loss of sight in right eye. (R. 98–99, 280). Contrary to her initial disability claim, Ms. Musgrave alleges in the Complaint that she suffers from chronic migraines, chronic pain syndrome, and pelvic pain in addition to the impairments initially listed in her disability claim. [ECF No. 1 at ¶ 4].

impairments listed in or medically equal to one listed in Appendix 1, Subpart P, this statement constitutes evidence that the ALJ considered the combined effects of a claimant's impairments. *Wilson*, 284 F.3d at 1224. "Therefore, in the absence of an explicit determination, [the Court] may infer from the record that the ALJ implicitly considered and found that a claimant's disability did not meet a listing." *Flemming v. Comm'r Soc. Sec. Admin*, 635 F. App'x 673, 676 (11th Cir. 2015) (citing *Hutchison*, 787 F.2d at 1463).

Here, the ALJ evaluated the medical evidence of record and found no listings were met or equaled. (R. 9, 39–41). Specifically, at step three, the ALJ stated:

> [Ms. Musgrave] has "severe" impairments within the meaning of the applicable regulations, but the impairments do not meet or medically equal any of the listed impairments. The [ALJ] considered [Ms. Musgrave]'s vision impairment under listing §2.04, but concludes that [she] did not have the requisite deficits. [Ms. Musgrave] does not allege that she has an impairment of listing level severity, nor has she met her burden of presenting medical evidence that supports such a finding. In addition, no expert designated by the Commissioner has offered an opinion that [Ms. Musgrave]'s impairments meet or equal any section of the listed impairments.
>
> The severity of [Ms. Musgrave]'s mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings §12.04 and §12.06.

(R. 40). Moreover, at the administrative hearing, the ALJ specifically asked Dr. Hamrick whether Ms. Musgrave's impairments met or equaled a Listing. (R. 60). Dr. Hamrick answered, "I do not see evidence of a meeting or equaling of the [L]isting." *Id.*

Thus, under *Wilson* and *Hutchison*, the ALJ's statement that he considered Ms. Musgrave's impairments "singly and in combination" when determining that Ms. Musgrave's impairments did not meet or medically equal a listing constitutes evidence that the ALJ adequately considered whether Ms. Musgrave's impairments, including her alleged migraine headaches, met or medically equaled a listed impairment.

17

In addition, the record reflects the ALJ considered Ms. Musgrave's allegations regarding her migraine headaches, as well as the related medical evidence of record. The ALJ specifically noted that Ms. Musgrave "contended that she suffered from migraine headaches every single day for five hours per day"; that she "treats her migraines by lying on her bed and putting a cold compress on her head"; and that she "takes her medications as prescribed, which cause nausea and impaired balance." (R. 42).

The ALJ also considered the Questionnaire prepared by Dr. Blaya in October 2018 based on the one-time neurological consultation with Ms. Musgrave in May 2018. In the Questionnaire, Dr. Blaya reported that Ms. Musgrave suffered from chronic migraine headaches with associated symptoms of nausea/vomiting, malaise, photosensitivity, and visual disturbances. (R. 44). The ALJ noted that, according to Dr. Blaya, Ms. Musgrave would generally be precluded from performing even basic work activities when she has a headache and would need a break from the workplace, and that she would likely be absent from work more than four times per month as a result of her headaches. *Id.*

> In attributing "little weight" to the opinion of Dr. Blaya, the ALJ stated:
>
> It appears that Dr. Blaya relied quite heavily on the subjective report of symptoms and limitations provided by [Ms. Musgrave], and seemed to uncritically accept as true most, if not all, of what [Ms. Musgrave] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of Ms. Musgrave's subjective complaints.

(R. 44). The ALJ further noted that Ms. Musgrave's treatment history with Dr. Blaya was "quite brief" since Dr. Blaya only saw Ms. Musgrave on one occasion. *Id.* This type of treatment by Dr. Blaya, the ALJ explained, "would not provide enough information to fill out the impairment forms with a degree of certainty, and [the] doctor's opinion is accordingly rendered less persuasive." *Id.*

18

The undersigned finds that the ALJ stated adequate reasons for discounting the opinion of Dr. Blaya regarding Ms. Musgrave's migraine headaches. The undersigned also considered the final decision and the ALJ's thorough review of Ms. Musgrave's medical records as they relate to her migraine headaches. Even though the ALJ did not specifically mention Listing 11.02 (*Epilepsy*) at step three, the ALJ nevertheless considered all of the medical evidence relating to Ms. Musgrave's migraine headaches impairment and, at a minimum, impliedly determined that her impairment did not meet a Listing. *See Haughie v. Comm'r of Soc. Sec.*, No. 2:16-CV-770, 2017 WL 6604397, at *6 (M.D. Fla. Dec. 27, 2017) (finding that the ALJ considered all of the claimant's impairments singly and in combination at step three and did not err in failing to specifically mention the claimant's migraine headache impairment or the evidence supporting this impairment at that step). In any event, as discussed further below, Ms. Musgrave has not met her burden of showing that her alleged migraine headaches impairment meets or medically equals Listing 11.02.

Accordingly, the undersigned finds that the ALJ considered all of Ms. Musgrave's impairments singly and in combination at step three and did not err in failing to specifically mention Ms. Musgrave's migraine headaches impairment or whether such impairment met or medically equaled a listing at that step in the sequential evaluation.

Therefore, Ms. Musgrave's claim of error in this regard should be denied.

### C. Whether Substantial Evidence Supports the ALJ's "Implicit" Finding That Ms. Musgrave's Migraine Headaches Did Not Meet or Medically Equal The Criteria Of Listing 11.02.

Ms. Musgrave further asserts that the ALJ erred by failing to articulate whether her migraine headaches equaled a medical listing. [ECF No. 20 at 9]. More specifically, Ms. Musgrave argues that a finding of disability is warranted because her headaches "occur in a frequency equivalent to that described under Medical Listing 11.02 for *Epilepsy*." [ECF No.

20 at 14; ECF No. 25 at 2–4]. In her Reply, Ms. Musgrave goes through the medical opinions in the administrative record supporting her assertion that the severity of her migraine headaches was of listing level.[8] [ECF No. 25 at 2–3].

In response, the Commissioner contends that Ms. Musgrave failed to meet her burden of proving that her migraine headaches met or medically equaled Listing 11.02. [ECF No. 23 at 7]. Indeed, the Commissioner asserts that even if the ALJ had specifically discussed Listing 11.02, the outcome under step three of the evaluation process would have been the same because there are no objective medical findings in the record documenting Ms. Musgrave's migraine headaches are of a listing-level severity. [ECF 23, at 6–7]. According to the Commissioner, Ms. Musgrave simply relies on her own subjective reports of the frequency of her migraine headaches. *Id.* at 7.

At step three—to meet the requirements of a listing—a claimant must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). As noted above, the Listings in the Social Security Regulations identify impairments that are considered severe enough to prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant can meet a listed impairment

---

[8] Plaintiff argues that the ALJ failed to consider Listing 11.02, as directed by Social Security Ruling, SSR 19–4p; Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). *See* Reply at 1–3. Social Security Rulings (SSRs) "do not carry the force of law, but they are binding on ALJs nonetheless. They reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." *Robinson v. Colvin*, No. 15-60502-CIV, 2016 WL 4801346, at *7 n.3 (S.D. Fla. Jan. 5, 2016) (Hunt, J.) (citation and internal quotation marks omitted). SSR 19–4p provides guidance on the evaluation of cases involving primary headache disorders and applies to applications pending on or after August 26, 2019. Although the ALJ issued a decision on Ms. Musgrave's claim in January 2019, before SSR 19-4p was issued, the Appeals Council's decision was made on June 3, 2020, and, therefore, the undersigned has considered SSR 19-4p. However, as further discussed below, the application of SSR 19-4p to the facts and circumstances presented does not change the outcome of the Commissioner's final decision regarding Ms. Musgrave's disability claim.

or otherwise establish an equivalence, then a claimant is presumptively determined to be disabled, and the ALJ's sequential evaluation of a claim ends. *Edwards*, 736 F.2d at 626. If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The burden is on a claimant to show that she meets the Listings. *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). To meet a Listing, a claimant must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 1525(a)–(d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)).

As there is no specific listing for migraine headaches, the parties appear to agree that the most analogous listing is Listing 11.02 (*Epilepsy*) for medical equivalence. [ECF No. 20 at 14; ECF No. 23 at 7]. Listing 11.02 requires a claimant suffer from either generalized tonic-clonic seizures or dyscognitive seizures. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. A generalized tonic-clonic seizure is characterized by:

> loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling.

*Id.* § 11.00H1a. On the other hand, a dyscognitive seizure is characterized by:

> alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such

as gestures or verbal utterances) may occur. During its course, a dyscognitive
seizure may progress into a generalized tonic-clonic seizure.

*Id.* § 11.00H1b. Thus, to meet Listing 11.02, a claimant must demonstrate, at a minimum, an
alteration of consciousness. *Id.*; *see also George v. Berryhill*, No. CV 116-137, 2017 WL 2469968,
at *6–7 (S.D. Ga. May 19, 2017), *report and recommendation adopted*, 2017 WL 2468801 (S.D.
Ga. June 7, 2017).

The undersigned has considered all of Ms. Musgrave's assertions in her memoranda
and testimony presented at the administrative hearing before the ALJ concerning her
migraine headaches. (ECF No. 20 at 10). Ms. Musgrave asserts that she has a long history of
chronic daily migraine headaches that last about five hours per day and sometimes a whole
day. (R. 69, 475, 479, 666). In December 2017 and May 2018, Dr. Goldman noted that Ms.
Musgrave's chronic daily migraines were "uncontrolled or worsened." (R. 764, 779). In May
2018, Ms. Musgrave consulted neurologist, Dr. Blaya, regarding her migraines. (R. 666). Ms.
Musgrave reported that she was taking Topamax, but it was not efficient in treating the
migraines. *Id.* Dr. Blaya's Headache RFC Questionnaire provides that Ms. Musgrave's
migraine headaches are pulsatile, located often over the frontal region bilaterally or
unilaterally, and are associated with neck pain, photophobia, phonophobia, osmophobia, and
nausea. *Id.* Dr. Blaya suggested obtaining authorization for Botox injections if the other
medication was not alleviating the migraine headaches. *Id.* The record shows that Ms.
Musgrave was awaiting approval for the Botox injections in September 2018.  (R. 786).

Ms. Musgrave bears the burden of establishing that her migraine headaches meet or
medically equal Listing 11.02. *Wilkinson*, 847 F.2d at 662. The undersigned finds that Ms.
Musgrave failed to meet that burden. None of the symptoms Ms. Musgrave alleges she
experiences as a result of her migraine headaches have generalized tonic-clonic or

dyscognitive seizure-like qualities. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. Nor do any of the treatment notes regarding Ms. Musgrave's migraines indicate any alteration of consciousness. In fact, as the Appeals Council noted in its decision, the medical evidence of record shows that Ms. Musgrave was alert and oriented with logical and coherent thoughts. (R. 9, 612, 616, 628–29, 633). In addition, Ms. Musgrave fails to adequately indicate how her migraine headaches significantly interfere with her daily activities. The record shows that Ms. Musgrave treats her migraine headaches by lying in bed and putting a cold compress on her head. (R. 70). Moreover, Dr. Blaya noted in his Questionnaire that Ms. Musgrave's headaches "may improve" with the suggested treatment plan, including Botox injections that were pending authorization. (R. 537). Based on the record before the Court, the undersigned finds that Ms. Musgrave does not meet or medically equal the criteria of Listing 11.02. *See Haughie*, 2017 WL 6604397, at *6 (finding a plaintiff failed to meet her burden of establishing migraines equal an impairment at step three because the migraines did not cause an alteration of awareness or significantly interfere with the plaintiff's activities of daily living).

As discussed above, that the ALJ failed to specifically discuss whether Ms. Musgrave's migraine headaches met a Listing does not impact this outcome. *See Hutchison*, 787 F.2d at 1463 ("While Appendix 1 must be considered in making a disability determination, it is not required that the [ALJ] mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing."). The ALJ made an express finding that Ms. Musgrave did not meet any Listing and an implied finding that Ms. Musgrave did not meet Listing 11.02. (R. 39–41). Although the ALJ did explain in detail why some of Ms. Musgrave's severe visual and mental impairments failed to meet specific listings (*i.e.*, Listings §§ 2.04, 12.04, and 12.06) (R. 40–41), he was not required to cite all the evidence he

considered or specify why each of Ms. Musgrave's severe or non-severe impairments, including the migraine headaches, did not meet a Listing. *See Hutchison*, 787 F.2d at 1463.

Therefore, the undersigned finds that the ALJ's implicit determination that Ms. Musgrave did not meet or medically equal Listing 11.02 is supported by substantial evidence.

### D. Whether The ALJ Failed To Properly Evaluate Plaintiff's Migraine Headaches At Step Four In Assessing Plaintiff's RFC.

Ms. Musgrave next contends that the ALJ failed to properly evaluate the evidence of the limiting effects of her migraine headaches and incorporate those into the RFC determination at step four. [ECF No. 20, 7–8]. According to the Commissioner, the ALJ's consideration of Ms. Musgrave's migraines was sufficient, and substantial evidence supports the ALJ's determination that they do not cause limitations exceeding the final RFC finding. [ECF No. 23, 5–6]. As explained below, the ALJ's evaluation of Ms. Musgrave's migraine headaches at step four is supported by substantial evidence.

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 n.5 (11th Cir. 2012).[9] When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." *Phillips*, 357 F.3d at 1238.

---

[9] Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, *i.e.*, sitting, standing, walking, lifting, carrying,

That is, an ALJ must consider all of a claimant's impairments, severe and non-severe, in combination. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)); *see also* 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). As one of the Commissioner's policy interpretation rulings provides:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

SSR 96-8p, Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). Therefore, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant. *Id.*

Here, the ALJ considered all of Ms. Musgrave's limitations during the RFC analysis. (R. 9–10, 40–45). As noted in the ALJ's decision, Ms. Musgrave has a moderate limitation in understanding, remembering, or applying information. (R. 40). She follows doctor's instructions despite her vision limitation, listens to spoken instructions carefully, and asks questions when needed. *Id.* Ms. Musgrave has a moderate limitation in interacting with

---

pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, *i.e.*, tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)–(d)).

others. Her speech is normal, and her language is fluent upon examination. *Id.* Ms. Musgrave spends time with others by talking on the phone or visiting. *Id.* She has never been fired or laid off from a job because of problems getting along with others. *Id.* As for concentrating, persisting, or maintaining pace, Ms. Musgrave has a moderate limitation. *Id.* Her cognition and memory are normal and, while her concentration is moderately impaired, she demonstrates average intellectual functioning, fair insight, and adequate social judgment. *Id.* As for adapting or managing oneself, Ms. Musgrave has a moderate limitation. *Id.* Ms. Musgrave reported that she is able to dress and feed herself and is able to warm up food for herself. *Id.* She is able to perform limited chores, such as making the bed. *Id.*

In the RFC assessment, the ALJ expressly accounted for Ms. Musgrave's migraine headaches impairment by acknowledging that she "suffered from migraine headaches every single day for five hours per day." (R. 42). The ALJ also considered Dr. Blaya's Questionnaire and medical opinion regarding Ms. Musgrave's migraine headaches, albeit according it little weight. (R. 44). Thus, Ms. Musgrave has not shown that the ALJ failed to credit her subjective complaints concerning the limiting effects of her migraines, and she has not demonstrated that she needed additional restrictions in her RFC as a result of her headaches. *See Zuba-Ingram v. Comm'r of Soc. Sec.*, 600 F. App'x 650, 656 (11th Cir. 2015) (finding the ALJ's decision was supported by substantial evidence where the claimant had not established credible RFC limitations regarding her headaches); *Hurst v. Comm'r of Soc. Sec.*, 522 F. App'x 522, 525 (11th Cir. 2013) (noting although the ALJ did not explicitly include the claimant's symptoms of migraine headaches in its list of impairments, the ALJ's "assignment of weight to, and discussion of, the evidence demonstrates that he accounted for these symptoms in

concluding that [the claimant] had a severe combination of impairments and in determining her [RFC]").

Based on the foregoing, the undersigned finds no error in the ALJ's assessment of Ms. Musgrave's RFC as it relates to her migraine headaches impairment.

### E.   Whether The ALJ Failed To Properly Evaluate Ms. Musgrave's Subjective Complaints Regarding Her Migraine Headaches.

Finally, Ms. Musgrave asserts that the ALJ failed to properly evaluate her subjective statements about the limiting effects of her migraine headaches. [ECF No. 20 at 11]. More specifically, in her Motion, Ms. Musgrave contends that the ALJ did not discuss with any specificity the treatment she sought for her headaches, the results of examinations, or the effect of her headaches treatment. *Id.* She also argues that the ALJ failed to articulate any basis for finding that her subjective symptom testimony was not credible. *Id.* Based on a review of the record in this case, the undersigned finds that the ALJ properly evaluated Ms. Musgrave's subjective complaints of disabling symptoms regarding her migraine headaches.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The claimant must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. *Id.*

"When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant

for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). The ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of disability." *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [ALJ], not the courts." *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the ALJ's credibility determination if it is supported by substantial evidence. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980).[10] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210–11 (11th Cir. 2005) (internal quotation marks and citations omitted).

Here, the undersigned finds that substantial evidence supports the ALJ's credibility determination. After reviewing the evidence, including Ms. Musgrave's subjective complaints regarding her migraine headaches impairment, the ALJ found that Ms. Musgrave's "medically determined impairments could reasonably be expected to cause the alleged symptoms," but the ALJ concluded that Ms. Musgrave's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 42). In discussing the evidence supporting his credibility assessment, the ALJ stated, in relevant part:

> [Ms. Musgrave]'s longitudinal medical history is inconsistent with her allegations of disability. The record reflects [Ms. Musgrave]'s allegations of an eye impairment. However, the consistency of [her] allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected in light of the objective evidence of record. The positive objective clinical and diagnostic findings since the amended alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.

(R. 42). The ALJ also noted that he considered Ms. Musgrave's testimony at the hearing and found that "the evidence of record does not completely support her allegations" and that her "contentions are not supported by clinical findings and are inconsistent with the medical records of evidence." (R. 45). Therefore, the ALJ provided specific and adequate reasons for discrediting Ms. Musgrave's subjective testimony of her other impairments, including her migraine headaches.

The ALJ provided examples of objective medical evidence in the record that conflict with Ms. Musgrave's subjective complaints regarding the limiting effects of her migraine headaches. (R. 45). As the ALJ noted, Ms. Musgrave's mood, affect, judgment, and thought

content were normal. (R. 43). She was oriented to person, place, and time. *Id.* Her speech and concentration were also normal. *Id.* The ALJ also noted that Ms. Musgrave treats her migraines by lying on her bed and putting a cold compress on her head and by taking her prescribed medications. (R. 42, 357). Although Ms. Musgrave asserts that she has a long history of chronic daily headaches, various treatment notes in the record are inconsistent with this assertion. (*See, e.g.*, R. 743, 754 – Progress Notes by Dr. Goldman, dated 6/30/2017 and 10/23/2017, noting "Negative for dizziness and headaches"; R. 681 – Progress Note by Dr. Rivers, dated 10/3/2017, noting "Positive for headaches (Related to corneal transplant, glaucoma and cataract surgery)"; R. 703 – Progress Note by Dr. Kang, dated 6/24/2018, noting "Negative for dizziness, . . . seizures, loss of consciousness, weakness and headaches"). Moreover, the Function Reports prepared by Ms. Musgrave in December 2016 and March 2017 make no mention of migraine headaches. (R. 297–304; 322–39).

Upon review, the undersigned concludes that the ALJ articulated adequate specific reasons supporting the credibility assessment. *See Martin v. Acting Comm'r of Soc. Sec.*, No. 21-11532, 2022 WL 1486387, at *8 (11th Cir. May 11, 2022) ("Here, the ALJ made a clearly articulated credibility finding and pointed to specific reasons for discounting [the claimant's] subjective testimony concerning the intensity and severity of her impairments—namely, that it was inconsistent with the available evidence in the record."). As discussed above, the objective medical findings do not support the disabling limitations alleged. Moreover, despite Ms. Musgrave's claim of a long history of chronic daily headaches, her treatment with her primary physician, Dr. Goldman, has been fairly conservative and indicates the condition can be managed with medication (R. 475, 479, 722, 779, 786–87). And there is no evidence in the record of any treatment with a specialist other than the one-time evaluation by Dr. Blaya in May 2018. (R. 666–71). Further, the record supports the ALJ's finding that Ms. Musgrave's

30

daily activities demonstrate she is not as limited as she claims. Despite her allegations of debilitating migraines, there is evidence in the record that she can talk on the phone, watch TV, feed her cat, make her bed, use the microwave, make sandwiches to feed herself, rinse dishes, and occasionally shop for groceries. (R. 298–99).

Again, it is not for this Court to question the ALJ's credibility determinations. Accordingly, after a thorough review of the record, the undersigned finds that because the ALJ gave specific reasons for the credibility finding, and these reasons are supported by substantial evidence, Ms. Musgrave's claim of error in this regard should also be denied.

## VIII.    CONCLUSION AND RECOMMENDATION

For the reasons set forth above and based on the record before this Court, the undersigned finds that Ms. Musgrave has failed to demonstrate that the Commissioner's final decision is not supported by substantial record evidence or that the correct legal standards were not applied.

Accordingly, the undersigned respectfully recommends that the Decision of the Commissioner be **AFFIRMED**, that Plaintiff's Motion for Summary Judgment [ECF No. 20] be **DENIED**, and that the Commissioner's Motion for Summary Judgment [ECF No. 23] be **GRANTED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Raag Singhal, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*,

885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 6<u>th</u> day of

February 2023.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Raag Singhal, *U.S. District Judge*
Counsel of Record